LALANCE & GROSJEAN MANUF'G CO. v. HABERMAN MANUF'G CO.

SAME v. MOSHEIM.

(Circuit Court of Appeals, Second Circuit. April 18, 1893.)

1. PATENTS FOR INVENTIONS—VALIDITY—INDEFINITENESS—ENAMELING.
   In letters patent No. 279,094, issued June 5, 1883, to Emile Kegreisz, claim 1 covers an improved process of giving a variegated appearance to enameled ironware, by recoating it with a colored glaze after it has been enameled in the usual way. The specification described the process as follows: "After the ordinary process of enameling has been completed, I prepare a thin glaze, composed of any coloring matter that can be made to remain mechanically suspended a short time in water, and apply it to the article. * * * The glaze should be made sufficiently thin to avoid being pasty, so that it will freely spread or run over the surface. * * * The glaze will be found to separate and coagulate in irregular spots." Held, that the patent is not invalid for insufficiency of description, in that

it does not state that the coloring matter must be coarse ground, so as to remain but a short time mechanically suspended, for one skilled in the art would know that this result could only be obtained by the use of coarse-ground material. 53 Fed. Rep. 375, 380, affirmed.

2. SAME—ANTICIPATION—EVIDENCE.

Anticipation of the patent was alleged on the ground that one Vollrath had long ago used a similar process, but the evidence showed that, as used by him, the second coat of coloring matter was uniform and of the same consistency as the original coating of enamel, and that a mottled appearance was produced by agitation of the vessel or by striking upon it. Moreover, Vollrath had applied for a patent in which three coats were used. *Held*, that an anticipation was not shown. 53 Fed. Rep. 375, 380, affirmed.

Appeal from the Circuit Court of the United States for the Northern District of New York.

In Equity.    These were two suits by the Lalance & Grosjean Manufacturing Company against the Haberman Manufacturing Company and Julius E. Mosheim, respectively, for the infringement of a patent.    There were decrees for complainant in each case, and defendants appeal.    See 53 Fed. Rep. 375, 380.    Affirmed.

R. D. Kenyon and E. Cowen, for appellant.

A. v. Briesen and Jos. H. Choate, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge.    These two appeals are from decrees of the circuit court for the northern district of New York upon two bills in equity which were founded upon the alleged infringement of letters patent No. 279,094, dated June 5, 1883, to Emile Kegreisz, assignor to the complainant, for an improved process of enameling ironware, and for the product of such process. The first claim of the patent is for the process, the second claim is for the product.    The Haberman Company is a manufacturer, which is charged with infringement of each claim. Mosheim is a merchant, and is charged with infringing the second claim only.    The circuit court granted decrees for an injunction and an accounting in each case.

The ordinary process of enameling hollow ironware is to clean the surface from rust or scale, to mix the enameling materials, melt them, cool and then grind the molten mass, and, after mixing with water, apply the enamel in liquid form to the iron vessel by pouring or dipping.    The vessel is then dried in an oven and burned in a muffle.    The burning fuses the enamel, and creates a new smooth, glassy surface, which is, as a rule, of a uniform color, liable to have spots or defects from one cause or another, and not attractive in appearance.    The object of the patented process was to decorate or beautify the surface, and cause vessels of mere utility to be pleasing to the eye.    The patentee described in his specification the object of the invention and his process, as follows:

"It consists in an improved method of giving a variegated appearance to the ware after the same has been coated or enameled by the usual process.    In the manufacture of white-enameled ironware by the usual process it frequent-

ly happens that dark spots appear upon the surface of the enameled article, which practically destroy its beauty, and render it unfit for commercial purposes, although it is in no wise injured for actual use. For the purpose of restoring the commercial value of the imperfect article by beautifying its surface, I have devised a process of recoating the same with a colored liquid in such a manner as to give an irregularly mottled appearance to the article, which conceals the spots appearing upon the previously white surface, and produces a new article of manufacture of greatly enhanced beauty and value. The article, having been formed of iron or other metallic substance by casting or otherwise, is subjected to the well-known process of enameling for producing a white or other plain-colored surface. After the ordinary process of enameling has been completed, I prepare a thin glaze, composed of any coloring matter that can be made to remain mechanically suspended a short time in water, and apply it to the article, preferably either by immersing the latter in a tank containing said glaze, or by pouring the glaze upon the article. The glaze should be made sufficiently thin to avoid being pasty, so that it will freely spread or run over the surface. After the article has been submitted to the second bath of thin glaze, the latter will be found to separate and coagulate in irregular spots upon the smooth surface formed by the first coating of glaze. These spots are composed of varying thicknesses, causing each spot to present various shades of the coloring matter used. By varying the thickness of the second coating of glaze its density in shade, when applied to the vessel, will be correspondingly varied. I have produced very fine effects with a blue glaze upon a white-enameled surface; but other colors may be used, either upon a white ground or the other plain colors obtained by the ordinary process of enameling. Two or more colors may be used for the glaze, and thus a great variety of irregularly colored surfaces be produced, according to the taste or fancy of the designer. After the application of the glaze, the article is placed in a drying oven, heated to a temperature of about 130 deg. Fahrenheit, and is kept there until the glaze is approximately dry, when it is removed to the oven or muffle employed in the well-known enameling process, where it is a second time fired, as in the usual process of enameling."

The commonly received method of preparing the enamel was to grind it as fine as might be, so that it should not sink in the water, but the particles should remain suspended, and should approximately resemble impalpable powder. The invention consisted in coarsely grinding the second coat of enamel, so that the particles were capable of suspension in water but a short time, and in mixing the enamel freely with water, so as to make a thin glaze. When the iron article is dipped in this second coating, the heavy particles rapidly form the freely flowing enamel into drops which have a wave-like motion, and which separate and coagulate in what the patent terms "irregular spots." The second coating, being thus made up of somewhat larger particles, flows over the surface with an irregular thickness, and the particles lodge upon the surface of the first coat, so as to give the appearance of having moved forward with a wave-like motion. The appearance of the surface is described by the complainant's expert as follows:

"The surface is covered with an irregular series of waves or of wave-like appearances, in which can nevertheless be traced a certain parallelism or uniformity of line flow. The lower edge of each wave is more opaque than the other portion, and shades off gradually until it is nearly or quite the tint of the ground upon which it is superposed."

The appearance of iron cooking utensils, bowls, platters, and other articles of ordinary household service, when ornamented in this way, is exceedingly agreeable to the eye, and this class of ware has therefore a utility of its own.

The two claims of the patent are as follows:

"(1) The hereinbefore described process of enameling and ornamenting metal ware, which consists in first covering the body of the article with a glaze of any suitable plain color, firing the same, then applying to the surface an additional coating or partial coating of glaze of a different color from the first, the glaze constituting the second coating or partial coating being of such a consistency as to coagulate in irregular spots upon the surface, and again firing, as set forth. (2) As a new article of manufacture, an enameled vessel, presenting a mottled or variegated surface of two or more colors, produced by the coagulating in irregular spots of one or more of the coatings of glaze, substantially as set forth."

The two questions in the cases which are earnestly contested, and which are not easily answered, are those which relate to the novelty of the process and the vagueness of the patent.

It is undeniable that Jacob J. Vollrath, an ironware manufacturer of Sheboygan, Wis., made from 1875 to 1883 and before the date of the invention large quantities of enameled ware, which was known by the name of "gray-enameled ware," and which he sold by the car load. He generally used two coats of enamel. The first was whitish in color, which, when burned became dark and smooth. The second coat, also of the same whitish color, was turned into the inside of the vessel by means of a dipper, the enamel was rapidly whirled around the inside so as to cover the surface, the superfluous enamel was poured back, the article was then hung upon a hook and struck with a wooden hammer apparently to expedite the flow, the rim of the vessel was wiped off, and the vessel was quickly "jerked" or shaken. The entire surface of the enamel, after a second burning, was flecked with small spots, not regular in shape, which the German mechanics who testified called "checky," and which gave the inside of the vessel a spotted or checked appearance of different shades of color. The object was to make the surface more attractive. No person who made the enamel, or who knew its composition, was examined as a witness, and therefore its character is defined only in general terms by persons who are not accustomed to exactness in the use of language. An accurate idea of the peculiarities of the second coat cannot be obtained merely from the general description which is given by these witnesses. It was thin enough so that by pouring it with a dipper and twirling the vessel around it was made to spread freely over the surface of the vessel, and was not so pasty but that it would run with freedom. Upon the question of the coarseness of the second coat, which is the peculiar and distinguishing feature of the patented process, at least three witnesses testify that it felt rough, or "sand-like," or coarse, and at least three more testify that it had to be stirred frequently to be kept from settling in a mass. Other witnesses testify in such a manner that the coarse character of the second coat may be inferred. While the intentionally vague oral testimony of Vollrath, which was designed to help the complainant, does not carry conviction to our minds, the fact of importance which is connected with Vollrath is that in 1881 he applied for and obtained a patent for a process of enameling by a three-fold coating, thus indicating that he did not regard his two-coat process, which was practiced from and after 1875, as a novelty

worthy of a patent. In this state of the testimony, the appearance and character of the specimens of ware which were made by the Vollrath process of 1875, and which are the defendants' exhibits, become of great importance. They show variegated or checkered spots, made intentionally, for the purpose of ornamentation, but they do not show the wave-like motion of the drops before coagulation, and in that respect they differ from the appearance of the patented ware, and the difference indicates, if it does not effectually prove, that the second coating was not, as a rule, coarsely ground. The Vollrath process was a two-coat process; there being little substantial or uniform difference between the coats. The second coat was universally spread over the surface of the vessel, which was hammered or pounded, so as to compel the coating to be generally thinly distributed, and to cause any excess to flow away. The vessel was then sharply shaken, so that the second coat should be broken up, or divided into spots. The whole evidence does not satisfy the mind that the patented process was used by Vollrath before he became the complainant's licensee.

The next question relates to the vagueness of the patent, and it is insisted with much force that the distinctive feature of the process is nowhere described, and that, so far as appears from either specification or claims, it was a repetition of the Vollrath method of enameling. As has been said, the customary mode of preparing enamel had been to reduce it to a fine powder. The patentee did not instruct the public in words that the enamel was to be coarsely ground. The instructions were that the second or thin glaze was to be composed of any coloring matter that can be made to remain mechanically suspended a short time in water. He evidently intended to distinguish between "a short time" and the usual long time which enamelers aimed at. His object could not have been to say that it must remain at least a short time, and might remain much longer, but he wanted to point out that all that was requisite was a short time of suspension. He did not say that a short time of suspension, i. e. coarse grinding, was indispensable, and therein consists the vagueness of the patent; but, inasmuch as coarse grinding was known by the enameler to result in suspension for a short time only in the water, it is insisted by the complainant that he was necessarily instructed by the language to grind coarsely.

It cannot be denied that the language is vague, and does not inform a person who is not instructed in the enameling art. Whether it sufficiently informs the members of the craft, whom the language was meant to instruct, no testimony has been given, except by the defendants' expert, who was not a practical enameler, who considered that the instructions were very indefinite. On the other hand, it is said by the complainant's expert, who was not a practical enameler, that the only way known to him of making coloring matter to remain suspended a short time in water was to grind it coarsely. It is noticeable that no testimony was produced by the defendant from any skilled enameler that he would not have been able to understand the patent and be correctly instructed by it. Silence upon this point in a case so carefully prepared as this was is significant,

and, inasmuch as the testimony furnished by the defendants, upon whom rests the burden of proof, is very slender, and it gives no light in regard to the information which the mechanic gained from the patent, our conclusion is that the defense has not been established.

That the invention, if novel, was patentable, is not susceptible of earnest denial. The attackable defects in the patent are those which have already been examined.

No testimony was introduced to disprove the prima facie case which the complainant made of infringement by the Haberman Manufacturing Company, which manufactured by the process and sold the product, and by the defendant Mosheim, who only sold the new article of manufacture which was made by the process, and therefore infringed the second claim. This claim is for the new article, produced by the process of the first claim. Glue Co. v. Upton, 4 Cliff. 237.

The decrees of the circuit court are affirmed.